**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

L. DAN WINSTEAD, JR., Individually
and as partner of the partnership of
L. Dan Winstead, Jr.; L. DAN
WINSTEAD, III; THOMAS D.
WINSTEAD, d/b/a Winstead Family
Partnership,
Plaintiffs-Appellants,

No. 95-2875

v.

UNITED STATES OF AMERICA,
Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
James A. Beaty, Jr., District Judge.
(CA-91-393)

Argued: March 5, 1997

Decided: April 1, 1997

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge, and
BLACK, Senior United States District Judge for the District of
Maryland, sitting by designation.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Michael and Senior Judge Black joined.

_____

**COUNSEL**

**ARGUED:** Kurt Eric Lindquist, II, THE SANFORD LAW FIRM,
Raleigh, North Carolina, for Appellants. Alice Lizbeth Ronk, Tax

Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Deanna L. Davis, THE SANFORD LAW FIRM, Raleigh, North Carolina; Erik P. Doerring, MCNAIR LAW FIRM, Columbia, South Carolina, for Appellants. Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Bruce R. Ellisen, Walter Clinton Holton, Jr., United States Attorney, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

WILKINSON, Chief Judge:

Daniel Winstead, Jr. appeals the district court's grant of summary judgment in favor of the government in this refund action for taxes paid under the Federal Insurance Contribution Act (FICA) and the Federal Unemployment Tax Act (FUTA). Winstead contends the district court incorrectly found that he was the employer of day laborers who worked for sharecroppers on his land. Under section 3401(d)(1) of the Internal Revenue Code, however, an individual who controls the payment of wages is considered the employer for FICA and FUTA purposes. Because Winstead paid the day laborers from his personal checking account, he must be considered the employer in this case. Accordingly, we affirm the judgment of the district court.

I.

From 1980 to 1982, tenant farmers grew tobacco on Daniel Winstead's land under sharecropping agreements with Winstead. Winstead operated this enterprise individually in 1980 and 1981. In 1982, he operated with his sons as the Winstead Family Partnership.

Under the sharecropping agreements, Winstead provided the sharecroppers with homes, land to farm, and equipment. He also agreed to split the costs of ordinary expenses such as fertilizer and chemicals. In return, the sharecroppers were responsible for working the land and were accountable for hired help. After the tobacco was sold, Winstead and the sharecroppers split the proceeds.

The sharecroppers used migrant farm workers as day laborers to assist with the farming. All but two of the sharecroppers, however, were unable to pay for hired help until after the tobacco was sold each year. Winstead therefore paid the day laborers directly from his checking account, and deducted this amount from the sharecroppers' share of the profits.

The IRS assessed FICA and FUTA taxes against Winstead and the Winstead Family Partnership for the wages paid to the day laborers from 1980 to 1982. Winstead brought this action for a refund of the partial payment of FICA and FUTA taxes, asserting that neither he nor the partnership was the employer of the day laborers during the relevant period. The United States filed a counterclaim, seeking the balance of the unpaid taxes.

The district court found that Winstead and the partnership had controlled the payment of wages to the day laborers, that they were therefore employers under 26 U.S.C. § 3401(d)(1), and that they were liable for outstanding FICA taxes in the amount of $13,817.84 and FUTA taxes in the amount of $4,204.02.

Winstead then filed the instant appeal.

II.

The Internal Revenue Code provides that an employer bears responsibility for withholding FICA and FUTA taxes. 26 U.S.C. §§ 3101-02, 3111 & 3301. Winstead has conceded that the day laborers were employees covered under FICA and FUTA. Thus the only question raised by this appeal is the identity of the employer of the day laborers -- Winstead and the partnership, or the sharecroppers?

The term "employer" is defined in section 3401(d) of the Internal Revenue Code as follows:

> (d)Employer. -- For purposes of this chapter, the term "employer" means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person except that --

3

> (1)if the person for whom the individual performs
> or performed the services does not have control of
> the payment of the wages for such services the
> term "employer" . . . means the person having con-
> trol of the payment of such wages.

26 U.S.C. § 3401(d)(1). While this definition is for income tax pur-
poses, the Supreme Court has held that it is equally applicable to
FICA. Otte v. United States, 419 U.S. 43, 51 (1974). In addition, since
Otte, courts have uniformly applied the definition of section
3401(d)(1) to FUTA. See, e.g., Lane Processing Trust v. United
States, 25 F.3d 662, 666 (8th Cir. 1994); In re Southwest Restaurant
Systems, Inc., 607 F.2d 1237, 1238-39 (9th Cir. 1979); In re Arma-
dillo Corp., 561 F.2d 1382, 1386 (10th Cir. 1977).

A.

The government notes that Winstead paid the day laborers directly
from his checking account and must therefore be considered the
employer under section 3401(d)(1). The plain language of that statute
suggests that the government's position is correct. The statute pro-
vides that the employer is normally "the person for whom an individ-
ual performs or performed any service" with one significant
exception. In those circumstances where the person receiving services
does not control the payment of wages, the individual controlling the
actual payment of wages is deemed to be the employer. Since Win-
stead paid the day laborers directly from his checking account and the
sharecroppers had no authority over this account, he would appear to
fit squarely within the 3401(d)(1) exception.

Winstead contests this conclusion, maintaining that section
3401(d)(1) requires more than just paying salaries, but rather requires
control over the hiring, firing, supervision, and the amount to be paid
employees. This argument, however, misses the point of the statute.
The factors to which Winstead points are indicia of a common law
employment relationship. Section 3401(d)(1), however, by design
does not look to those factors but rather focuses on who has control
over the payment of wages. As the Supreme Court noted in Otte, the
3401(d)(1) provision was included to simplify the collection of taxes

by placing "responsibility for withholding at the point of control." 419 U.S. at 50. As the Ninth Circuit has explained:

> No one other than the person who has control of the payment of the wages is in a position to make the proper accounting and payment to the United States. It matters little who hired the wage earner or what his duties were or how responsible he may have been to his common law employer. Neither is it important who fixed the rate of compensation. When it finally comes to the point of deducting from the wages earned that part which belongs to the United States and matching it with the employer's share of FICA taxes, the only person who can do that is the person who is in "control of the payment of such wages."

Southwest Restaurant Systems, 607 F.2d at 1240; see also Education Fund of Electrical Industry v. United States, 426 F.2d 1053, 1057 (2d Cir. 1970). It is undisputed that Winstead paid the day laborers directly from his checking account. Under section 3401(d)(1), Winstead and the Winstead Family Partnership must therefore be considered employers for FICA and FUTA purposes.

B.

Winstead's remaining arguments have little merit. First, Winstead argues that the holding in Otte -- that section 3401(d) is applicable for FICA purposes -- is limited to those situations where the putative employer is also liable for income tax purposes. Because cash remuneration for agricultural labor was excluded from the definition of "wages" for income tax withholding during the relevant time period, 26 U.S.C. § 3401(a)(2) (1982), amended by , Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239,§ 7631(a), 103 Stat. 2106, 2378, Winstead argues he should also have been exempted from withholding and paying FICA and FUTA taxes. Cash remuneration for agricultural labor, however, is and was included within the definition of "wages" for FICA and FUTA purposes, see 26 U.S.C. §§ 3121(a)(8) & 3306(b)(11), and Otte did nothing to change this definition. That decision simply held that section 3401(d)(1)'s definition of employer was applicable to FICA. Winstead's argument must therefore fail.

Winstead also maintains that the definition of "employer" articulated by the Court in <u>Otte</u> is limited to trustees in bankruptcy. He contends that the liability in <u>Otte</u> arose solely because the trustee was acting in a capacity similar to an agent or trustee and had assumed a "surrogate relationship" with the bankrupt former employer. The Supreme Court, however, did not rely on any agency, trustee, or "surrogate" theory. Instead, it relied on the plain language of section 3401(d)(1). <u>Otte</u>, 419 U.S. at 50. Moreover, the courts have repeatedly applied the section 3401(d)(1) definition of employer for FICA purposes in cases in which the "control of the payment of wages" did not arise by reason of bankruptcy. <u>See Kittlaus v. United States</u>, 41 F.3d 327, 329-31 (7th Cir. 1994); <u>Lane Processing Trust</u>, 25 F.3d at 666; <u>Southwest Restaurant Systems</u>, 607 F.2d 1237-38.

Lastly, Winstead claims that he was relieved from FICA taxes by section 3121(b)(16) which exempts from the definition of employment

> service performed by an individual under an arrangement with the owner or tenant of land pursuant to which--
>
> (A)such individual undertakes to produce agricultural or horticultural commodities . . . on such land,
>
> (B)the agricultural or horticultural commodities produced by such individual, or the proceeds therefrom, are to be divided between such individual and such owner or tenant, and
>
> (C)the amount of such individual's share depends on the amount of the agricultural or horticultural commodities produced.

26 U.S.C. § 3121(b)(16). Winstead concedes that the day laborers at issue do not fall within this exemption, but argues that the sharecroppers do. If a sharecropper is not an employee, he claims, it stands to reason that the employees of the sharecropper should also be exempt.

We disagree. The plain language of the section 3121(b)(16) exemption indicates that it applies only to those workers who share the profits and risks of cultivating a commodity and thus are considered self-employed. The day laborers at issue in this case were manifestly not self-employed, and should not be deprived of FICA coverage. Neither the exemption nor its rationale has any application here.

III.

Winstead further argues that he should not be liable for FUTA taxes because he did not pay sufficient wages to the day laborers to come within the terms of FUTA. Section 3306(a)(2) of the Internal Revenue Code identifies employers of agricultural labor subject to FUTA taxes as follows:

> Agricultural labor. -- In the case of agricultural labor, the term "employer" means, with respect to any calendar year, any person who --
>
> (A)During any calendar quarter in the calendar year or the preceding calendar year paid wages of $20,000 or more for agricultural labor.

26 U.S.C. § 3306(a)(2).

Winstead contends that he "did not pay $20,000 or more of wages during any calendar quarter for 1980 and 1981," and that the district court made no factual findings regarding the amount of wages paid in those years. In a tax refund action, however, the IRS's assessment of taxes is presumed correct, and the taxpayer bears the burden of proving otherwise. United States v. Janis, 428 U.S. 433, 440 (1976). In this case, the IRS's assessment of FUTA taxes indicated that Winstead met the prerequisite of section 3306(a)(2) for the years in question. Winstead has pointed to no evidence that the IRS's assessment was incorrect, and his conclusory allegations are not sufficient to create a factual dispute.

7

IV.

For the foregoing reasons we affirm the judgment of the district court.

AFFIRMED

8